87 P.3d 1201 (2004)
STATE of Washington, Respondent,
v.
Refujio Abel RODRIGUEZ, Appellant.
No. 20717-0-III.
Court of Appeals of Washington, Division 3, Panel Three.
April 15, 2004.
*1202 James E. Egan, Attorney at Law, Kennewick, WA, for Appellant.
David W. Corkrum, Deputy Prosecuting Attorney, Pasco, WA, for Respondent.

OPINION PUBLISHED IN PART
SWEENEY, A.C.J.
Jury instructions must "more than adequately" inform the jury of the law on self-defense in order to pass appellate scrutiny. State v. Walden, 131 Wash.2d 469, 473, 932 P.2d 1237 (1997). Here, the jury could have believed that in order for Refujio Rodriguez to act in self-defense, he had to fear he was in actual danger of death or serious permanent disfigurement or loss of a body part or function. That reduced the burden on the State to disprove self-defense. We therefore reverse.

FACTS
Christopher Van Dinter confronted Refujio Rodriguez about the noise he was making outside their apartment building. Mr. Van Dinter punched Mr. Rodriguez twice in the face. Police arrested Mr. Van Dinter for the assault. The next day, using profane language, Mr. Van Dinter confronted Mr. Rodriguez's minor son about the incident.
Two days after the first assault, Mr. Rodriguez approached a group which included Mr. Van Dinter. He told Mr. Van Dinter he wanted to talk to him. Mr. Rodriguez said he wanted to be friends. Mr. Van Dinter told Mr. Rodriguez he did not want to speak with him and he was supposed to stay away from him. Both men were angry. Mr. Rodriguez left.
Mr. Rodriguez returned approximately 15 minutes later and called to Mr. Van Dinter and asked to speak to him. Mr. Van Dinter stood up. Again, he was angry. A friend *1203 restrained Mr. Van Dinter and persuaded him to talk to Mr. Rodriguez. Mr. Van Dinter and his friend met Mr. Rodriguez at the corner of the building. The conversation again grew acrimonious. Mr. Van Dinter told Mr. Rodriguez if he did not leave him alone, he was going to hit him. The friend again physically restrained Mr. Van Dinter and told him assaulting Mr. Rodriguez was not worth another trip to jail.
Mr. Van Dinter shoved Mr. Rodriguez onto the steps of the apartment. Mr. Rodriguez stumbled. Mr. Rodriguez then lifted his shirt and pulled out a knife. A scuffle ensued. Mr. Rodriguez stabbed Mr. Van Dinter in the side.
Mr. Rodriguez testified that he armed himself with a knife because he was afraid of Mr. Van Dinter. Mr. Van Dinter was younger. Mr. Van Dinter had threatened to knock his teeth out. And Mr. Van Dinter had a big ring on his finger. Mr. Rodriguez explained that he took out the knife as he was being pushed into the stairs to try to keep Mr. Van Dinter at bay. He told the jury he did not stab Mr. Van Dinter deliberately; it happened as he was trying to catch his balance and Mr. Van Dinter leaned in to get at him.
The State charged Mr. Rodriguez with one count of first degree assault while armed with a deadly weapon. The court gave the self-defense instructions requested by Mr. Rodriguez. The jury found Mr. Rodriguez guilty and returned a special verdict that he was armed with a deadly weapon.

DISCUSSION
JURY INSTRUCTIONS
Mr. Rodriguez now challenges the self-defense instructions he requested.
Invited Error. If the challenge to the instructions on appeal was simply that they were incorrect statements of the law and should not have been given, the invited error doctrine would directly answer Mr. Rodriguez's challenge. State v. Studd, 137 Wash.2d 533, 538, 973 P.2d 1049 (1999). But that is not his assignment of error. Instead, he contends that his lawyer was ineffective in proposing the instructions in the first place. And while it would seem that the defendant should not be allowed to make an end run around the invited error doctrine, the rule laid down by our Supreme Court holds otherwise:
Under the invited error doctrine, a defendant may not request that instructions be given to the jury and then complain upon appeal that the instructions are constitutionally infirm. Here, however, defendant maintains that any error that occurred was the result of ineffectiveness of counsel and therefore the invited error doctrine does not apply. Review is not precluded where invited error is the result of ineffectiveness of counsel. Defendant claims that counsel's representation was deficient because counsel failed to investigate the effective dates of the relevant statutes in connection with the factual charging period.
State v. Aho, 137 Wash.2d 736, 744-45, 975 P.2d 512 (1999) (emphasis added) (citations omitted). We must then address these instructions in the context of Mr. Rodriguez's assignment of errorthe ineffective assistance of counsel.
Ineffective Assistance of Counsel. We start with the strong presumption that counsel's representation was effective. Studd, 137 Wash.2d at 551, 973 P.2d 1049. This requires the defendant to demonstrate the absence of legitimate strategic or tactical reasons for the challenged conduct. State v. McFarland, 127 Wash.2d 322, 336, 899 P.2d 1251 (1995).
Mr. Rodriguez must show his lawyer's performance was deficient and that that deficiency prejudiced him. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance is performance "`below an objective standard of reasonableness based on consideration of all the circumstances.'" Studd, 137 Wash.2d at 551, 973 P.2d 1049 (quoting McFarland, 127 Wash.2d at 334-35, 899 P.2d 1251). Mr. Rodriguez claims his counsel was ineffective for proposing flawed jury instructions. We then turn to the self-defense instructions proposed by counsel and given by the court.
*1204 Standard of Review. The legal standard we apply to jury instructions is:
Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.
State v. Irons, 101 Wash.App. 544, 549, 4 P.3d 174 (2000). But our Supreme Court subjects self-defense instructions to more rigorous scrutiny. "Jury instructions on self-defense must more than adequately convey the law." Walden, 131 Wash.2d at 473, 932 P.2d 1237. The instructions read as a whole must make the relevant legal standard "`manifestly apparent to the average juror.'" State v. Allery, 101 Wash.2d 591, 595, 682 P.2d 312 (1984) (quoting State v. Painter, 27 Wash.App. 708, 713, 620 P.2d 1001 (1980)). The precedent, the principle, and indeed the reasons for singling out this particular type of instructionself-defensefor increased appellate scrutiny are a bit murky. But, that said, it is the announced standard.
Standard for Self-Defense. Self-defense requires only a "subjective, reasonable belief of imminent harm from the victim." State v. LeFaber, 128 Wash.2d 896, 899, 913 P.2d 369 (1996). The jury need not find actual imminent harm. Id. The instructions should allow the jury to put themselves in the defendant's shoes and from that perspective determine the "reasonableness from all the surrounding facts and circumstances as they appeared to the defendant." Id. at 900, 913 P.2d 369.
The court instructed the jury here that:
A person is entitled to act on appearances in defending, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily harm, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.
Clerk's Papers (CP) at 93 (Instruction No. 12) (emphasis added); see 11 WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.04, at 203 (2d ed. 1994) (WPIC).
Now, standing alone or with other instructions to this jury on the question of self-defense, this statement would at least be innocuous and perhaps even an accurate statement of the law. The problem here is that the court also instructed the jury on the requirements of assault in the first degree. And as part of that charge to the jury, the court defined "great bodily harm" as follows:
Great bodily harm means bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ.
CP at 90 (Instruction No. 9); see WPIC 2.04.
This is the only definition of "great bodily harm" in the instructions to the jury. And when this definition is read into the self-defense instruction, the problem becomes apparent. Based on this definition of "great bodily harm," the jury could easily (indeed may have been required to) find that in order to act in self-defense, Mr. Rodriguez had to believe he was in actual danger of probable death, or serious permanent disfigurement, or loss of a body part or function. And this is precisely the problem the Supreme Court warned against in State v. Walden.[1] Like the instructions that the court found objectionable in Walden, the instructions here "[b]y defining [great bodily injury] to exclude ordinary batteries, a reasonable juror could read [the instruction] to prohibit consideration of the defendant's subjective impressions of all the facts and circumstances, i.e., whether the defendant reasonably believed the battery at issue would result in great personal injury." State v. Walden, 131 Wash.2d 469, 477, 932 P.2d 1237 (1997).
And the Supreme Court Committee on Jury Instructions has modified the WPIC accordingly. Id. at 477-78, 932 P.2d 1237. Particularly relevant to the assignment of error here (ineffective assistance of counsel) is the fact that modification to the WPIC took place in 1998, well before this trial. WPIC 2.04.01 (Supp.1998).[2]
*1205 Deficient Performance. If we can conceive of some reason why Mr. Rodriguez's lawyer would propose these instructions as a tactic or strategy to advance Mr. Rodriguez's position at trial, then we would conclude that the lawyer's performance was not deficient. Studd, 137 Wash.2d at 551, 973 P.2d 1049. But we can conceive of none here. The net effect was to decrease the State's burden to disprove self-defense.
Prejudice. The prejudice prong of a claim of ineffective assistance of counsel compares well to a harmless error analysisessentially "no harm, no foul." Id. at 551, 973 P.2d 1049. But here these particular defense instructions struck at the heart of Mr. Rodriguez's defense, i.e., he was very afraid of Mr. Van Dinter. As instructed the jury was required to find that he was scared of death or at least permanent injury. And that is not the test.
SUFFICIENCY OF THE EVIDENCE
Mr. Rodriguez next claims that the evidence was insufficient to support a finding that great bodily injury was inflicted upon Mr. Van Dinter.
We then examine whether a rational trier of fact could find the elements of the crime beyond a reasonable doubt when the evidence is viewed in the light most favorable to the State. State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. We defer to the trier of fact to resolve conflicting testimony, evaluate the credibility of witnesses, and generally weigh the persuasiveness of the evidence. State v. Lubers, 81 Wash.App. 614, 619, 915 P.2d 1157 (1996).
To convict Mr. Rodriguez of first degree assault, the jury had to find that he intended to inflict "great bodily harm," assaulted Mr. Van Dinter, and inflicted "great bodily harm." RCW 9A.36.011. And the jury was so instructed. CP at 87, 88; see WPIC 35.03, 35.04. The court further instructed the jury that "[g]reat bodily harm means bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." CP at 90; see WPIC 2.04.
Dr. James Scully treated Mr. Van Dinter. He had a six-inch stab wound in the left upper lateral abdomen, with omentum (a fold of intestinal matter) protruding from the wound. Dr. Scully performed an exploratory laparotomywhich involved an incision from the breast bone to the navelwhere he located and repaired a stab wound to the back of the stomach. The stab wound caused stomach contents to contaminate the abdominal cavity, and irrigation was required. After surgery, Mr. Van Dinter was taken to the intensive care unit. The injuries were potentially life threatening. Report of Proceedings (RP) at 203.
Based on this testimony, a rational jury could conclude that Mr. Rodriguez inflicted an injury that created the probability of death.

CONCLUSION
The proposed self-defense instructions here reduced the burden on the State to disprove self-defense. We then reverse Mr. Rodriguez's conviction and remand for a new trial. See State v. Ermert, 94 Wash.2d 839, 851, 621 P.2d 121 (1980). His other assignments of error are without merit.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
WE CONCUR: BROWN and SCHULTHEIS, JJ.
NOTES
[1] 131 Wash.2d 469, 476-77, 932 P.2d 1237 (1997).
[2] This supplement to the WPIC revised the instruction for "great personal injury" to accommodate cases involving "the use of deadly force in self-defense" since Walden adopted the rationale of Painter, 27 Wash.App. 708, 620 P.2d 1001, and decided "because `great bodily harm' is an element of first degree assault and is distinctly defined in that context, it should not be used in instructions on self-defense." Walden, 131 Wash.2d at 475 n. 3, 932 P.2d 1237.